UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JOEL DENNIS CRAFTON, | ) |
| Plaintiff, | ) |
| VS. | ) No. 15-1131-JDT-egb |
| BENTON COUNTY, ET AL., | ) |
| Defendants. | ) |

ORDER PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT PROCESS BE
ISSUED AND SERVED ON THE REMAINING DEFENDANTS

On May 27, 2015, Plaintiff Joel Dennis Crafton ("Crafton"), who is presently confined at the Northwest Correctional Complex in Tiptonville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint concerns Crafton's previous incarceration at the Benton County Jail ("Jail") in Camden, Tennessee. On May 29, 2015, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Benton County;[1] Jail Administrator Pat Chandler; Lt. Debbie Beard; Sergeant ("Sgt.") Joyce Douglas; Nurse Sheila Kennedy;[2] and Correctional Officer ("C.O.") Mike Hill.

---

[1] The Court construes the claims against the Benton County Sheriff's Department as claims against Benton County.

[2] This Defendant's last name is misspelled "Kenndy" in the complaint.

## I. THE COMPLAINT

Crafton alleges that on August 4, 2014, he was taken to the Jail. Upon arrival, he informed the jailers that he needed medical attention for pain in his side and lower stomach as a result of having been kicked repeatedly. (Statement of Claim, ECF No. 1-1 ¶ 1, at 1.) Crafton was denied medical attention at that time and told that he would see the Jail nurse in one to fourteen days. (*Id.*) On August 5, 2014, Crafton was moved from a booking cell to a holding cell by himself, at which time he asked to see the nurse and again was told that he would be seen in one to fourteen days. (*Id.* ¶ 2.) On August 6, 2014, Crafton spoke with Defendant Nurse Kennedy, who was passing out medication to other inmates, and told her he was in pain. (*Id.* ¶ 3.) Defendant Kennedy responded that she was busy and would see him within one to fourteen days unless he was dying. (*Id.*) Defendant Kennedy said that Crafton could fill out a $20 co-pay form to see a nurse practitioner, but he would still have to wait until that person came in; however, Crafton never received the form. (*Id.*)

Crafton asked to speak with Defendant Chandler, but instead spoke with Defendant Beard. (*Id.* ¶ 4.) Crafton told Defendant Beard that he needed to see a doctor, but again was told that he would be seen in one to fourteen days. (*Id.*) When Crafton told Defendant Beard that he had been denied a grievance form several times, she informed Crafton his case was not grievable because he was not dying and that he would be seen within one to fourteen days. (*Id.*, at 2.)

On August 7th or 8th, Crafton was brought out to see the nurse and nurse practitioner. (*Id.* ¶ 5.) Crafton explained his situation and asked about medical treatment and x-rays, but he was told it would need to be approved by Defendant Chandler and that approval was unlikely. (*Id.*)

Between August 9 and 10, 2014, Crafton was moved to an open pod with other inmates, who needed to help him get out of bed because of the pain. (*Id.* ¶ 6.) On August 11, 2014, Crafton spoke with Defendant Kennedy, telling her that he was unable to relieve himself. (*Id.* ¶ 7.) Defendant Kennedy told Crafton to fill out the co-pay form with the $20 payment in order to be seen, but Crafton never received the form. (*Id.*) From August 12 through the 14, Crafton repeatedly asked for medical attention and for the co-pay forms but was denied. (*Id.* ¶ 8.) During those three days, Crafton was unable to relieve himself and was throwing up. (*Id.* ¶ 9, at 2-3.)

On August 14, 2014, Crafton got up begging for medical help. (*Id.* ¶ 10, at 3.) Crafton was informed by Defendants Douglas and Hill and an unknown officer named Joe that he needed to fill out a $20 co-pay form to see the nurse practitioner, but he would need to wait for her to come to the jail on her scheduled day. (*Id.*) Crafton never received a form and also never received a requested grievance form. (*Id.*)

All day on August 14th and into the evening, Crafton was in such severe pain, throwing up and unable to relieve himself, that he could only lie on the floor by the toilet. (*Id.* ¶ 11.) Inmate French called the jailers and Crafton's family to try to get help. (*Id.*) Between 9:00 p.m. and 9:30 p.m. that night, when jailers came to check on him, Crafton told jailers Kevlin and Wess, who are not parties to this complaint, that he needed help, and Kevlin returned to Crafton's cell with a pill the nurse told him to give Crafton; however, Kevlin returned twenty minutes later to find that Crafton was not feeling any better and was still throwing up. Kevlin left again and returned with more pills the nurse told him to give Crafton. (*Id.* ¶ 12, at 3-4.)

Between 9:30 p.m. and 10:30 p.m. Kevlin returned with a $20 co-pay form for Crafton to sign before they would help him and get him to the hospital. (*Id.* ¶ 13, at 4.) Between 10:30

p.m. and 11:30 p.m. Crafton was taken to the hospital, where he was given pain medicine and a CAT scan was performed. (*Id.* ¶ 14.) He was then taken by ambulance to the Jackson Madison County General Hospital, where he underwent emergency surgery for twisted "small bowels" and scar tissue. (*Id.*)

Crafton was hospitalized for five to seven days, during which he could not eat and lost twenty to thirty pounds. (*Id.* ¶ 15.) When he was released from the hospital, he was returned to the Jail with staples in his stomach and pain medications. (*Id.*) When he arrived back at the Jail, Crafton was told that he needed to be in lockdown so he would not get assaulted by other inmates for his pain medication. (*Id.* ¶ 16, at 4-5.) Crafton informed them he did not want to go in lockdown because if anything happened he would not be able to get help. (*Id.* at 5.) He also pointed out that medications were given outside the cells, so the other inmates would not know what he was taking. (*Id.*) Crafton informed them he wanted to be in an open pod where he would be able to get help; however, he was told that if he wanted to be in an open pod he would have to sign a paper stating that he was refusing his medication. (*Id.*)

Crafton seeks compensation for his pain and suffering. (ECF No. 1 at 3.)

### III. ANALYSIS

A. <u>Screening and Standard</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

5

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  § 1983 Claim

Crafton filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint contains no factual allegations against Defendant Chandler. The only references to Chandler are that Crafton asked to speak to Chandler about his situation but spoke to Defendant Beard instead (ECF No. 1-1 ¶ 4, at 1) and that Defendant Kennedy did not think Chandler would approve any medical testing or x-rays (*id.* ¶ 5, at 2). When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Additionally, Defendant Chandler cannot be held liable as a supervisor. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of her subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Therefore, Crafton cannot sue Defendant Chandler even if a subordinate violated his rights.

Crafton's claims against the Sheriff's Department are claims against Benton County. When a § 1983 claim is made against a municipality or county, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The second issue is dispositive of Crafton's claims against Shelby County.

A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or

custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g.*, *Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); *cf. Raub v. Corr. Med. Servs., Inc.*, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The allegations of the complaint fail to identify an official policy or custom of Benton County which caused injury to Crafton.

Crafton alleges the Defendants refused to provide him with needed medical treatment. It appears Crafton may have been a pretrial detainee while he was at the Jail; however, for both pretrial detainees and convicted prisoners, the Sixth Circuit has analyzed claims for failure to provide adequate medical care under the Eighth Amendment's deliberate indifference standard, even after the decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015).[3] *See Morabito v. Holmes*, 628 F. App'x 353, 356-58 (6th Cir. 2015) (applying the objective reasonableness standard to pretrial detainee's excessive force claims and deliberate indifference standard to claim for denial of medical care).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler,* 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. In the context of an Eighth Amendment claim based on a lack of medical care, the objective component requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks omitted); *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The complaint sufficiently alleges that Crafton suffered from a serious medical condition.

---

[3] In *Kingsley*, the Supreme Court held that excessive force claims brought by pretrial detainees must be analyzed under the Fourteenth Amendment's standard of objective reasonableness, rejecting a subjective standard that takes into account a defendant's state of mind. *Id.* at 2472-73.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and also disregards that risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not state a claim for deliberate indifference. *Id.* at 838.

For purposes of screening, Crafton has stated a plausible claim for denial of medical care against Defendants Kennedy, Beard, Douglas and Hill.

## IV. CONCLUSION

The Court DISMISSES Crafton's claims against Defendants Benton County and Chandler for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Process will be issued for Defendants Kennedy, Beard, Douglas and Hill on Crafton's claims for denial of medical care.

The Clerk is ORDERED to issue process for the remaining Defendants, Nurse Shelia Kennedy, Lt. Debbie Beard, Sgt. Joyce Douglas and C.O. Mike Hill and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Kennedy, Beard, Douglas

11

and Hill pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Crafton shall serve a copy of every subsequent document he files in this cause on the attorneys for the Defendants or on any unrepresented Defendant. Crafton shall make a certificate of service on every document filed. Crafton shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[4]

Crafton shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[4] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.